| | |
|---|---|
| 1 | SPENCER HAMER, Bar No. 182107 |
| | Spencer.Hamer@klgates.com |
| 2 | K&L GATES LLP |
| | 1 Park Place, 12th Floor |
| 3 | Irvine, CA  92614 |
| | Telephone: 949.253.0900 |
| 4 | Fax No.:    949.253.0902 |
| 5 | CARTER L. NORFLEET, Bar No. 318152 |
| | Carter.Norfleet@klgates.com |
| 6 | K&L GATES LLP |
| | 10100 Santa Monica Blvd., 8th Floor |
| 7 | Los Angeles, CA 90067 |
| | Telephone: 310.552.5000 |
| 8 | Fax No.:    310.552.5001 |
| 9 | GREGORY T. LEWIS, Bar No. 323679 |
| | Greg.Lewis@klgates.com |
| 10 | K&L GATES LLP |
| | 2801 Vía Fortuna, Suite 650 |
| 11 | Austin, TX 78746 |
| | Telephone: 512.482.6800 |
| 12 | Fax No.:    512.482.6859 |

Attorneys for Defendant,
SHASTA BEVERAGES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAHANGIR W. AHMED, on behalf of himself, and all others similarly situated, | Case No. |
| Plaintiffs, | **DEFENDANT SHASTA BEVERAGES, INC.'S NOTICE OF REMOVAL OF ACTION PURSUANT TO 28 U.S.C. § 28 U.S.C. §§ 1332(a), 1441, & 1446— DIVERSITY JURISDICTION** |
| v. | |
| SHASTA BEVERAGES, INC., a Delaware corporation; and DOES 1 through 50, inclusive, | **[28 U.S.C. §§ 1332(a), 1441, & 1446]** |
| Defendants. | Los Angeles Superior Court Case No.  24STCV30350 (*originally filed in County of Los Angeles Superior Court on November 18, 2024*) |

**TO THE CLERK OF THE ABOVE-CAPTIONED COURT:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Defendant Shasta Beverages, Inc., by and through its attorneys, K&L Gates LLP, hereby removes to this Court the action entitled *Jahangir W. Ahmad v. Shasta Beverages, Inc.*, Case No. 24STCV30350 (the "State Court Action") from the Superior Court of the State of California, County of Los Angeles, in which court the State Court Action was filed. In support of this Notice of Removal, Defendant states as follows:

1. As set forth below, the case is properly removed to this Court under 28 U.S.C. § 1441 because the Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), in that this matter is a civil action in which the amount in controversy exceeds the sum of $5,000,000 exclusive of costs and interest, there are more than 100 members in the putative class, and is between citizens of different states.

2. By filing this Notice of Removal, Defendant does not intend to waive, and hereby reserves, any objection as to venue, the legal sufficiency of the claims alleged in the State Court Action and all other defenses. Defendant reserves the right to supplement and amend this Notice of Removal.

## **BACKGROUND**

3. On November 18, 2024, Plaintiff Jahangir W. Ahmad filed the State Court Action naming Shasta Beverages, Inc. as Defendant. The Complaint asserts the following causes of action: 1) failure to pay all wages; 2) failure to pay all overtime wages at the legal overtime pay rate; 3) failure to provide all meal periods; 4) failure to authorize and permit all paid rest periods; 5) derivative failure to timely furnish accurate itemized wage statements; 6) independent failure to timely furnish accurate itemized wage statements; (7) violations of California Labor Code sections 201 and 202; and 8) unfair business practices under California Business and Professions Code section 17200. Additionally, Plaintiff seeks attorneys' fees and various penalties under the California Labor Code.

4. Defendant was served in the State Court Action with a copy of the Summons and Complaint by personal service on their registered agent, National Registered Agents, Inc., on December 9, 2024. As such, service was completed on December 9, 2024 at the time of personal delivery. CAL. CODE CIV. PROC. § 415.10. Along with the Summons and Complaint, Defendant has received a Notice of Case Assignment, Alternative Dispute Resolution Information Package, Civil Case Cover Sheet, Stipulation – Early Organizational Meeting, Stipulation – Informal Discovery Conference, Stipulation and Order – Motions in Limine, Order Pursuant to CCP 1054(a), and First Amended General Order. Copies of the aforementioned documents are attached as Exhibit A to the Declaration of Gregory T. Lewis ("Lewis Decl."). (Lewis Decl., ¶ 2, Ex. A.)

5. On January 7, 2025, Defendant filed an Answer to the Complaint in the State Court Action. (Lewis Decl., ¶ 3, Ex. B.)

6. Pursuant to 28 U.S.C. § 1446(a), the attached Exhibits A–B constitute all process, pleadings and orders served on Defendant or filed or received by Defendant in this action. To Defendant's knowledge, no further process, pleadings, or orders related to this case have been filed in Los Angeles County Superior Court or served by any party. (Lewis Decl., ¶ 4.)

## TIMELINESS OF REMOVAL

7. In accordance with the requirements of 28 U.S.C. § 1446(b), this Notice of Removal is timely because it was filed within thirty (30) days of Defendant being served with the Summons and Complaint (i.e., process) in this action. (*See* Ex. A ¶ 4 above.) The Summons and Complaint are the initial pleadings setting forth the claim for relief on which this removal is based.

8. Defendant is the only named defendant in this action. (*See* Lewis Decl., ¶ 4.) The undersigned counsel represents the only named defendant in this action. Doe defendants are not considered for removal purposes.

///

## CAFA JURISDICTION

9.  As set forth below, this Court has jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official, or other governmental entity; (3) there is diversity between at least one class member and the named and served Defendant; and (4) the total amount in controversy for all class members exceeds $5,000,000. Each of these four requirements is met.[1]

## THE PUTATIVE CLASS EXCEEDS 100 MEMBERS

10. 28 U.S.C. § 1332(d)(5)(B) sets forth that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." This requirement is easily met in the case at bar.

11. Plaintiff seeks to represent several different classes consisting of "[a]ll California citizens employed by Defendant as non-exempt employees . . . during the applicable time period" for the applicable cause of action. (Lewis Decl., Ex. A. ¶ 25.) Defendant employed approximately 400 putative class members from November 18, 2020, to the present (*See* Declaration of Maria Iglesias in Support of Defendants' Notice of Removal to Federal Court ("Iglesias Decl.") ¶ 3.) As such, the size of the putative class exceeds 100 persons.

///

---

[1] A notice of removal need only provide a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Because § 1446 tracks Rule 8's liberal pleading standard, a notice of removal need only allege the grounds plausibly and need not be supported by evidentiary submissions. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."); *Roa v. TS Staffing Servs., Inc.*, No. 2:14-CV-08424-ODW, 2015 WL 300413, at *2 (C.D. Cal. Jan. 22, 2015) ("The 'short and plain statement' language from § 1446(a) applies to the entire notice of removal, and therefore would apply equally to all CAFA allegations and not just the amount-in-controversy requirement.").

## DEFENDANT IS NOT A GOVERNMENTAL ENTITY

12. Under 28 U.S.C. § 1332(d)(5)(B), the CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

13. Defendant is a corporation—not a state, state official, or other government entity exempt from the CAFA. (Iglesias Decl., ¶ 4.)

## DIVERSITY OF CITIZENSHIP

14. 28 U.S.C. §1332(d)(2)(A) requires that "any member of a class of plaintiffs is a citizen of a State different from any defendant."

15. Plaintiff's Complaint states that "at all times mentioned in this Complaint [Plaintiff] was a citizen of the State of California." (Lewis Decl., ¶ 2, Ex. A. (Complaint)). Based on Plaintiff's Complaint and on information and belief, at the time of commencement of this action in state court and at the time of filing of this removal petition, Plaintiff was and still is a natural person and a citizen and resident of the State of California.[2]

16. Defendant was incorporated under the laws of Delaware. Defendant is a duly formed Delaware corporation in good standing at the time the State Court Action was filed and at the time of the filing of this Notice. (Iglesias Decl., ¶ 4.) Thus, Defendant is a citizen of Delaware based on its place of incorporation.

17. Defendant's principal place of business is in Florida. (*Id.*) Thus, Defendant is also a citizen of Florida based on its principal place of business. *See Hertz Corp. v. Friend*, 130 U.S. 1181, 1192-93 (2010) (the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities").

---

[2] A notice of removal may rely on "information and belief" to allege the citizenship of the parties. *See Ehrman v. Cox Communications, Inc.*, 932 F.3d 1223, 1227 (9th Cir. 2019) (concluding that citizenship alleged "upon information and belief" is sufficient to establish minimal diversity jurisdiction at pleading stage).

18. Because Plaintiff is a citizen of a different state than Defendant, the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2) is satisfied.

## **THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000**[3]

19. Although Defendant denies all liability alleged in the Complaint if damages or restitution were awarded on Plaintiff's claims alleged, the aggregate amount as to the putative class would exceed $5,000,000.[4]

20. This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which the amount in controversy for all class members in the aggregate exceeds $5,000,000. 28 U.S.C. § 1332(d).

21. The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 81. Supporting evidence is required only if the plaintiff contests, or the court questions, the allegations of the notice of removal. *Id.* at 89. Otherwise "the defendant's amount-in-controversy

---

[3] The alleged damages calculations contained herein are for purposes of removal only. Defendant denies that Plaintiff is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

[4] In order to establish the amount in controversy requirement is met, Defendant does not concede liability nor is it required to do so. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy."); *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were 'unauthorized' within the meaning of the complaint."). Moreover, defenses do not affect the amount in controversy. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 295–96 (1938); *Riggins v. Riggins*, 415 F.2d 1259, 1261–62 (9th Cir. 1969).

allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is accepted when a plaintiff invokes federal court jurisdiction. *Id.* at 82.

22. Here, Plaintiff's allegations and claims make evident that they place more than $5,000,000 in controversy.

23. Plaintiff alleges a cause of action for a violation of the Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200, *et seq.* (Lewis Decl., Ex. A. ¶¶ 8, 25.) Alleging a UCL violation extends the statute of limitations on Plaintiff's wage and hour claims from three to four years from the filing of the Complaint, or going back to July 6, 2019. *See* CAL. BUS. & PROF. CODE § 17208; *Cortez v. Purolater Air Filtration Products Co.*, 23 Cal. 4th 163, 178–79 (2000) (four-year statute of limitations for restitution of wages under the UCL).

  a. <u>Plaintiff's First and Second Causes of Action for Failure to Pay Minimum and Overtime Wages Places $3,913,000 in Controversy</u>

24. By way of his first and second causes of action, Plaintiff and the putative class seek allegedly unpaid wages at minimum and overtime wage rates pursuant to California Labor Code §§ 204, 510, 1182.12, 1194, 1194.2, 1197, and 1198. (Lewis Decl., Ex. A. ¶¶ 32–58.) Plaintiff alleges that he and the putative class members incurred unpaid minimum and overtime compensation because Defendant failed to compensate them for all hours worked, failed to pay overtime for hours worked in excess of eight hours per day and/or in excess of 40 hours in a week, and failed to properly calculate the regular rate of pay necessary to calculate premium overtime wage rates. (*Id.*) However, Plaintiff does not state the amount of unpaid overtime he and the putative class allegedly worked each week.

25. Between November 18, 2020 (the beginning of the statutory period for these claims) through the present, Defendant employed approximately 400 non-exempt workers in the state of California. There are approximately 216 weeks between November 18, 2020, and the present, that these 400 non-exempt employees could have

each worked (for a total of approximately 86,000 workweeks as of the filing of this Notice).

26. If Plaintiff prevails on his claim for minimum wages, he and the putative class may be entitled to recovery of all unpaid wages. Moreover, to determine the monetary amount in controversy for Plaintiff's overtime claim, the total number of unpaid hours worked by Plaintiff and the putative class that would have been considered, overtime hours is multiplied by one and one-half times their respective regular rates of pay rate in effect during the time the overtime was allegedly worked. *See* Cal. Wage Order 7-2001, §3(A)(1).

27. Plaintiff does not allege a specific amount of damages for these causes of action, but asserts that as a result of Defendant's "established company policy and procedure, at each and every one of [its] individual facilities," Defendant "consistently . . . [r]equired the members of the Wage Class to spend time under Defendants' control for work-related tasks without compensation, including but not limited to requiring employees to wait in a long line before clocking in"; and that "Defendants suffered, permitted, and/or required the members of the Wage Class to work without paying for all time they were under Defendants' control." (Lewis Decl., Ex. A. (Complaint) ¶ 40.)

28. Further, Plaintiff alleges that as a result of "established "established company policy and procedure, at each and every one of [its] individual facilities," Defendant "consistently . . . [s]cheduled and/or required the members of the Overtime Rate Class to work in excess of eight (8) hours per workday and/or in excess of forty (40) hours per workweek" and "[d]id not calculate overtime pay using all such applicable rates of pay." (Lewis Decl., Ex. A. (Complaint) ¶ 54.)

29. Starting from January 1, 2018, the California state minimum wage has been at least $13.00 per hour.[5] Even taking an extremely conservative approach of one hour of minimum wages and one hour of overtime wages per workweek from the start

---

[5] *See, e.g.*, https://www.dir.ca.gov/dlse/faq_minimumwage.htm.

and end date of the putative class period, Plaintiff's minimum wages claim places at least **$1,118,000.00** into controversy ($13.00 x 1 hour per week x 86,000 workweeks) and his overtime claim places at least **$1,677,000.00** into controversy ($13.00 x 1 hour per week x 1.5 overtime premium x 86,000 workweeks)

30. Further, Plaintiff seeks liquidated damages under Labor Code § 1194.2 for Defendant's alleged failure to pay minimum wages to putative class members (Lewis Decl., Ex. A. (Complaint) ¶¶ 43–44). If he prevails, liquidated damages may be awarded in the amount equal to the unpaid minimum wages. Taking the same conservative approach of one hour of unpaid minimum wage per week per employee, Plaintiff seeks to recover another **$1,118,000.00** from this action ($13.00 x 1 hour per week x 86,000 workweeks)

31. In sum, although Defendant vigorously denies Plaintiff's allegations, including the alleged damages, if Plaintiff were to prevail on his unpaid minimum and overtime wages claims with respect to himself and the putative class, the amount in controversy for these claims alone could be **$3,913,000.00**.

### b. Plaintiff's Third and Fourth Causes of Action for Failure to Provide Meal and Rest Periods Places $2,236,000 in Controversy

32. Plaintiff's third and fourth causes of action allege that "[o]n one or more occasions, the members of the Meal Period Class worked over five hours per shift" "some members of the Meal Period Class worked over 10 hours per shift"; and that the members of the Meal Period Class did not "validly or legally waive" these meal periods or "enter into any written agreement with Defendants agreeing to an on-the-job paid meal period." (Lewis Decl., Ex. A. (Complaint) ¶¶ 65–68.) Plaintiff further alleges, "[a]s a matter of Defendants' established company policy, Defendants failed to always comply with the meal period requirements" under California law (Lewis Decl., Ex. A. (Complaint) ¶ 69.)

33. Moreover, Plaintiff alleges that "[t]he members of the Rest Period Class sometimes worked over four hours per shift" and that "the members of the Rest Period

Class sometimes worked over six hours per shift and in some cases over 10 hours per shift." (Lewis Decl., Ex. A. ¶ 77.) Plaintiff further alleges that Defendant "[a]s a matter of Defendants' established company policy, Defendants failed to always authorize and permit legally-compliant rest periods" and that "Defendants did not authorize and permit rest periods for shifts every four hours or major faction thereof" under California law. (Lewis Decl., Ex. A. ¶ 79.)

34. Labor Code section 226.7 provides that an employer who fails to provide a 30-minute meal period for every five hours worked, or a 10-minute rest break for every four hours worked or major fraction thereof, can be liable for up to one meal period premium and one rest break premium per workday. *See* CAL. LAB. CODE § 226.7. Meal and rest break premiums are equivalent to one hour of the employee's regular rate of compensation. *Id.*

35. These causes of action increase the amount in controversy in this case. Plaintiff alleges these meal and rest period violations occurred on "one or more occasions." A conservative approach is to assume one missed meal period every week and one missed rest period every week (for the entire putative class). *See Mendoza v. Savage Servs. Corp.*, No. 219CV00122RGKMAA, 2019 WL 1260629, at *2 (C.D. Cal. Mar. 19, 2019) (noting that even where a defendant does not provide factual support for its calculations, "courts in this district routinely apply a 20% violation rate, that is one missed meal and rest period per work week") (alterations omitted). Specifically, one unpaid meal period and rest period premium (two total violations per week) places at least $2,236,000.00 in controversy (86,000 workweeks x $13.00 x 2 hours/violations per week).

    c. <u>Plaintiff's Fifth and Sixth Causes of Action for Failure to Provide Accurate Itemized Statements Places $1,600,000 in Controversy.</u>

36. Labor Code section 226(a) provides that employers must, at the time of payment of wages, issue itemized wage statements which reflect nine enumerated categories of information, including gross wages earned, total hours worked,

deductions, net wages earned, inclusive dates of the pay period, name of the employee and name and address of the legal entity that is the employer.

37. Section 226(e) provides for a statutory penalty for violations of Labor Code section 226(a)'s wage statement requirements of $50 or actual damages per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not exceeding an aggregate amount of $4,000. CAL. LAB. CODE § 226(a). The statutory period for Labor Code section 226(e) penalties is one year. CAL. CODE CIV. PROC. § 340.

38. In his fifth cause of action, Plaintiff allege that "as a pattern and practice," Defendants knowingly and intentionally failed to furnish accurate wage statements to the members of the Derivative Wage Statement Class, including but not limited to, failing to provide the beginning and ending of each work period, meal period interval, total daily hours worked, total hours worked per pay period, and the applicable rates of pay" and "derivatively failed to provide accurate and complete information as required by one or more items listed in Labor Code § 226(a)(1)-(9)." (Lewis Decl., Ex. A. (Complaint) ¶¶ 88–89.) Given the frequency at which Plaintiff alleges other wage-and-hour violations occurred, Plaintiff's Complaint alleges inaccurate itemized wage statements were provided quite commonly. Thus, a reasonable interpretation of Plaintiff's theory is that a wage statement violation occurred in each pay period worked by putative class members during the statute of limitations period. (*See* Lewis Decl., Ex. A. (Complaint) ¶¶ 87–88.) (alleging that "[a]s set forth herein in prior causes of action, Defendants failed to pay the members of the Derivative Wage Statement Class all wages due and owing" and "[a]s a derivative result of this failure to pay wages")

39. In his sixth cause of action, Plaintiff allege that "[a]s a pattern and practice," "Defendants did not and still do not furnish each of the members of the Independent Wage Statement Class with an accurate itemized statement in writing showing all applicable hourly rates in effect during the pay period"; "the Independent Wage Statement Class Members could not and cannot promptly and easily ascertain

required information without reference to other documents or information"; and "the members of the Independent Wage Statement Class were misled by Defendants as to the correct information regarding various items, including but not limited to all applicable hourly rates in effect during the pay period." (Lewis Decl., Ex. A. (Complaint) ¶¶ 97–99.) Given the frequency at which Plaintiff alleges other wage-and-hour violations occurred, Plaintiff's Complaint alleges inaccurate itemized wage statements were provided quite commonly. Thus, a reasonable interpretation of Plaintiff's theory is that a wage statement violation occurred in each pay period worked by putative class members during the statute of limitations period. (*See* Lewis Decl., Ex. A. (Complaint) ¶ 97.) (alleging Defendant committed these violations "[a]s a pattern and practice").

40. Assuming that all of the putative class members in the statutory period reach the maximum penalty cap of $4,000 each a, Plaintiff places at least $1,600,000 into controversy (400 non-exempt employees x $4,000).

    d. <u>Plaintiff's Eighth Cause of Action for Failure to Pay Wages Upon Termination Places $546,000 in Controversy.</u>

41. Plaintiff also alleges a claim for failure to pay wages upon separation of employment under California Labor Code section 203, which has a maximum statutory penalty of 30 days of wages per affected employee. The statute of limitations for a wage action is three years. *See* CAL. CODE CIV. PROC. § 338.

42. Because waiting time penalties can arise with a failure to pay wages, and Plaintiff alleges that Defendant "willfully failed to pay … all wages" to separated putative class members, (*see* Lewis Decl., Ex. A. (Complaint) ¶¶ 107–108), even minute amounts of unpaid wages could give rise to waiting time penalties under Plaintiff's allegations. *See also* CAL. LAB. CODE § 203.

43. Here, there are approximately 175 non-exempt, hourly employees in California whose employment with Defendant ceased within the three-year statute of limitations. (Iglesias Decl., ¶ 5.) Thus, assuming that each of these employees seek the

maximum statutory penalty of 30 days of wages per employee, and using $13.00 as the hourly rate of pay for each putative class member, the amount in controversy for Plaintiff's and the putative class's waiting time penalties claim alone would be $546,000.00 (175 separated employees x 30 days x 8 hours x $13.00 per hour).

     e. <u>Plaintiff's Request for Attorney's Fees Places Another $2,073,750.00 in Controversy.</u>

44. Finally, Plaintiff seeks reasonable attorneys' fees under California Code of Civil Procedure § 1021.5 and Labor Code §§ 218.5, 226(e), which must also be considered in determining whether the jurisdictional limit is met. (Lewis Decl., Ex. A. (Complaint), Prayer ¶¶ f, i, k, n, q, s, and u) "Where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). The Ninth Circuit has "long held . . . that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Accordingly, future attorney's fees are properly included in calculating the amount in controversy for CAFA removal. *Id.*

45. Courts in the Ninth Circuit have held that "[a] 25% fee recovery is the 'benchmark' level for reasonable attorneys' fees in class action cases." *See Evers v. La-Z-Boy Inc.*, No. 21CV2100-LL-BLM, 2022 WL 2966301, at *10 (S.D. Cal. July 27, 2022) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011)).

46. Adding all of the possible damages together (a total of $8,295,000.00), even at 25%, Plaintiff places another **$2,073,750.00** into controversy through his attorneys' fees claim.

      f. <u>Plaintiff Places at Least $10,368,750 into Controversy in Total.</u>

47. Although Defendant denies that Plaintiff and the putative class are entitled to any relief, accepting Plaintiff's claims as true, it is more likely than not that the amount in controversy in this case exceeds **$10,368,750:**

| | |
|---|---|
| Unpaid Overtime and Minimum Wages | $3,913,000 |
| Failure to Provide Meal & Rest Periods | $2,236,000 |
| Failure to Pay Wages on Termination | $546,000 |
| Failure to Provide Accurate Itemized Statements | $1,600,000 |
| Attorneys' Fees | $2,073,750.00 |
| **Total** | $10,368,750 |

48. Based on the allegations in Plaintiff's Complaint, the $5 million jurisdictional amount requirement of the CAFA is met.

49. Defendant provides the foregoing calculations only to demonstrate that the amount in controversy here easily exceeds the amount in controversy requirement of the CAFA. Defendant makes no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations passes muster.

## REMOVAL PROCEDURES/VENUE

51. Venue lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 85(d), 1441(a), and 1446(a). Plaintiff originally brought this action in the Superior Court of the State of California, County of Los Angeles. The appropriate assignment of this action is to the Central District of California.

## NOTICE TO PLAINTIFF AND STATE COURT

52. Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District, as required by 28 U.S.C. § 1446(d), written notice of this Notice of Removal is being promptly served upon counsel for Plaintiff and a copy of this Notice of Removal is being filed with the Clerk of the Superior Court of the State of California for the County of Los Angeles.

53. WHEREFORE, Defendant prays that the Court remove this civil action from the Superior Court of the State of California, County of Los Angeles, to the United States District Court for the Central District of California.

Dated: January 8, 2025                K&L GATES LLP


By: */s/ Spencer Hamer*
Spencer Hamer
Carter L. Norfleet
Gregory T. Lewis
Attorneys for Defendant
SHASTA BEVERAGES, INC.

# **PROOF OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document—Defendant Shasta Beverages, Inc.'s Notice of Removal of Action Pursuant to 28 U.S.C. §§ 1332(a), 1441, & 1446—Diversity Jurisdiction—was electronically filed with the Court and served through via mail on the 8th day of January 2025 to:

Emil Davtyan, Esq.

Gregg Lander, Esq.

Vanessa M. Ruggles, Esq.

Taylor B. Keaster, Esq.

**D.LAW, INC.**

1635 Pontius Avenue, Floor 2

Los Angeles, CA 90025-3361

Telephone: (424) 320-6420

Fax: (424) 320-6454

Counsel for Plaintiff Jahangir W. Ahmad

By: */s/ Gregory T. Lewis*
     Gregory T. Lewis