Emil Davtyan, Esq. (#299363)
Gregg Lander, Esq. (#194018)
Vanessa M. Ruggles, Esq. (#254031)
Taylor B. Keaster, Esq. (#334715)
D.LAW, INC.
1635 Pontius Avenue, Floor 2
Los Angeles, CA 90025-3361
Tel.: (424) 320-6420 / Fax: (424) 320-6454
Emails: Emil@d.law, Gregg@d.law,
Vanessa@d.law, Taylor@d.law

Attorneys for Plaintiff Jahangir W. Ahmad,
on behalf of himself and all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAHANGIR W. AHMAD, on behalf of himself and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SHASTA BEVERAGES, INC., a Delaware corporation; and Does 1 to 50, inclusive,<br><br>    Defendants. | **CLASS ACTION**<br><br>Case No. 2:25-cv-00212-GW-MAA<br><br>**PLAINTIFF'S BRIEF REGARDING SUBJECT MATTER JURISDICTION**<br><br>Date: February 20, 2025<br>Time: 8:30 a.m.<br><br>Honorable George H. Wu<br>Courtroom 9D<br><br>Action filed: November 18, 2024<br>Trial date: None Set |

///

///

///

- i -

**Plaintiff's Brief Regarding Subject Matter Jurisdiction**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. LEGAL ANALYSIS ............................................................................................ 1

    A. **Defendant cannot meet its jurisdiction burden under CAFA** ...... 1

    B. **Defendant cannot support its assumptions regarding violation rates and the number of impacted workweeks/class members** .... 1

        1. **Plaintiff's First/Second Causes of Action for Failure to Pay Minimum and Overtime Wages place $153,680 in controversy** ............................................................................. 2

            a. **Defendant improperly assumes that 100% of class members worked 100% of workweeks during the class period** ........................................................... 2

            b. **Defendant improperly assumes two hours of off-the-clock work for every putative class member** .................. 4

        2. **Plaintiff's Third and Fourth Causes of Action for Failure to Provide Meal and Rest Periods place $416,000 in controversy** ............................................................................. 6

        3. **Plaintiff's Fifth/Sixth Causes of Action for Failure to Provide Accurate Itemized Statements place $400,000 in controversy** ............................................................................. 7

        4. **Plaintiff's Seventh Cause of Action for Failure to Pay Wages Upon Termination places $341,250 in controversy** .................. 8

        5. **Plaintiff's Request for Attorneys' Fees places $327,732.50 in controversy** ..................................................................... 8

III. CONCLUSION .................................................................................................... 9

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alvarado v. Dart Container Corp. of California*
    4 Cal.5th 542 (2018) ...................................................................................... 5

*Blevins v. Republic Refrigeration, Inc.*
    No. CV 15-04019 MMM (MRWx), 2015 WL12516693
    (C.D. Cal., Sept. 25, 2015) ............................................................................ 6

*Brown v. BQ Operations Holding, LLC*
    No. CV 21-2293-DMG (JCX), 2021 WL 1922929
    (C.D. Cal. May 13, 2021) .............................................................................. 9

*Dart Cherokee Basin Operating Co., LLC v. Owens*
    135 S. Ct. 547 (2014) ..................................................................................... 1

*Dobbs v. Wood Group PSN, Inc.*
    201 F.Supp.3d 1184 (E.D. Cal. 2016) ........................................................... 3

*Elliot v. Spherion Pacific Work, LLC*
    368 Fed.Appx. 761 (9th Cir. 2010) ............................................................... 7

*Fritsch v. Swift Transportation Co. of Arizona, LLC*
    899 F.3d 785, 796 (9th Cir. 2018) ................................................................ 9

*Ibarra v. Manheim Investments, Inc.*
    775 F.3d 1193 (9th Cir. 2015) ....................................................................... 1

*Lopez v. First Student, Inc.*
    427 F.Supp.3d 1230 (C.D. Cal. 2019) .......................................................... 3

*Taylor v. CoxCom, Inc.*
    No. CV 12-10149-CJC JPRX, 2013 WL 327728
    (C.D. Cal., Jan. 29, 2013) .............................................................................. 3

**Statutes**

Cal. Labor Code § 203 ........................................................................................ 8

Cal. Labor Code § 226 ........................................................................................ 7

Cal. Code Civ. Proc. § 340 .................................................................................. 7

28 U.S.C. § 1332 .................................................................................................. 1

## I. INTRODUCTION

Defendant Shasta Beverages, Inc., removed this action from state court, asserting that this Court has jurisdiction under the Class Action Fairness Act (CAFA). However, this Court in fact lacks jurisdiction because the amount in controversy does not meet the threshold under CAFA.

Under this Court's January 24, 2025, Minute Order (ECF 10), Plaintiff Jahangir W. Ahmad hereby submits briefing on the issue of whether this Court has subject matter jurisdiction over this case. Plaintiff maintains that Defendant has failed to meet its burden of establishing a proper basis for this Court's subject matter jurisdiction.

## II. LEGAL ANALYSIS

### A. Defendant cannot meet its jurisdictional burden under CAFA.

Where a party seeks to invoke federal jurisdiction under CAFA, it must show minimal diversity of citizenship, that the putative class is comprised of at least 100 members, and that the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(2). The U.S. Supreme Court has clarified the procedural requirements for removal under CAFA. In *Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 553-54 (2014), the court determined that "when the plaintiff contests, or the court questions, the defendant's allegation," the defendant must submit evidence to establish the amount in controversy by a preponderance of the evidence. *Id*. Significantly, the burden of proof remains with the party who seeks to invoke federal jurisdiction. *Id*.; *Ibarra v. Manheim Investments, Inc.,* 775 F.3d 1193, 1199 (9th Cir. 2015) (discussing *Dart Cherokee* and noting "the removing defendant[] has the burden of proof").

### B. Defendant cannot support its assumptions regarding violation rates and the number of impacted workweeks/class members.

Defendant's removal is predicated on the demonstrably false assertion that every putative class member worked full time for every week they worked during

- 1 -

**Plaintiff's Brief Regarding Subject Matter Jurisdiction**

the entire class period. For this reason, Defendant will be unable to establish the requisite amount in controversy by a preponderance of the evidence.

### 1. *Plaintiff's First/Second Causes of Action for Failure to Pay Minimum and Overtime Wages Place $153,680 in Controversy.*

#### a. Defendant improperly assumes that 100% of class members worked 100% of workweeks during the class period.

Defendant's Removal papers assume two unpaid hours of off-the-clock work (one hour of straight time and one hour of overtime) per class member per week, at a rate of $13.00 per hour, throughout the putative class period, for a total amount in controversy of $3,913,000.

To reach this amount, Defendant assumed that all 400 putative class members worked **every single week of the entire class period**, for a total of 86,000 impacted workweeks. Not. ¶ 25 (ECF 1). As such, Defendant's calculation rests on the premise that every single employee (1) was full-time, (2) was employed the entire class period, and (3) worked every single week with no vacations, time off, or leave.[1]

Defendant's assumptions are also internally inconsistent, asserting on the one hand that 400 individuals worked the entire class period, and on the other, that 175 of the 400 employees separated from Defendant's employment within the past three years. Not. ¶¶ 11, 25, 43 (ECF 1). Thus, all of Defendant's contradictory calculations are called into question.

Further, Defendant's assumption that all class members worked every week during the entire class period is easily refuted by Plaintiff Ahmad's own experience. Plaintiff's employment with Defendant began on about July 19, 2023, and lasted until approximately April 10, 2024 (roughly 38 workweeks).

---

[1] Notably, although Defendant cites to a "Declaration of Maria Iglesias," it did not serve or file such a declaration.

Declaration of Jahangir W. Ahmad ("Ahmad Dec.") ¶ 2. In other words, out of the 216 workweeks that Defendant assumes Plaintiff Ahmad worked, he actually worked only about 18% of that.

In fact, not only was Plaintiff not employed by Defendant for most of the class period, but he also witnessed several employees who left Defendant's employment during the class period. *Id.*, ¶¶ 4-6. As such, neither the employees who separated nor their replacements worked for Defendant the entire class period.

"[A]ssumptions cannot be pulled from thin air." *Lopez v. First Student, Inc.*, 427 F.Supp.3d 1230, 1235–36 (C.D. Cal. 2019). Defendant assuming 100% of class members worked 100% of workweeks is analogous to assuming a 100% violation rate. A defendant cannot rely on unsupported assumptions of violation rates for the claims alleged. *Dobbs v. Wood Group PSN, Inc.,* 201 F.Supp.3d 1184, 1188 (E.D. Cal. 2016).

In *Taylor v. CoxCom, Inc.*, No. CV 12-10149-CJC JPRX, 2013 WL 327728, at *3-4 (C.D. Cal., Jan. 29, 2013), the defendant assumed that all 600 class members worked for the entire class period. In remanding the action to state court, the district court found that the defendant's own evidence conceded that not all class members were employed during the entire class period, and the defendant provided no evidence for the assumption that class members worked four shifts per week or fifty weeks per year. *Id*. The court noted that the defendant's assumptions were contradicted by its own evidence, "which demonstrates that Plaintiff left his employment… approximately five months before the end of the class period" and "that 138 of the 600 individuals separated from employment with Defendants." *Id.* at *4. Here, as there, Defendant's own evidence concedes that not all 400 class members worked the entire class period.

Further, that Plaintiff was employed for only about 38 of the 216-week class period establishes that Defendant's assumptions are simply not reasonable. If Plaintiff were to assume that class members, on average, worked for Defendant for

- 3 -
**Plaintiff's Brief Regarding Subject Matter Jurisdiction**

approximately the same quantity of workweeks as Plaintiff, then at least Plaintiff's estimate is based on actual evidence, including the fact that Plaintiff worked 38 workweeks, and Plaintiff's personal knowledge of the high employee turnover rate.

Based on this evidence, if all class members worked on average 40 workweeks, this would bring the impacted workweeks in question to 16,000 (40 workweeks x 400 putative class members) instead of Defendant's assumed 86,000 workweeks.

### b. Defendant improperly assumes two hours of off-the-clock work for every putative class member.

Plaintiff's complaint alleges that Plaintiff and similarly situated employees were required by Defendant to remain under Defendant's control without payment therefore, including, for example, for long lines at the time of clocking in and out.

Defendant's removal papers assume that all employees worked two unpaid hours (one hour of straight time and one hour of overtime) of off-the-clock work per week. This assumption is flawed for at least two reasons. First, Defendant's assumption that every class member worked two unpaid hours of off-the-clock per week is unsupported by the allegations in the complaint or any evidence. Second, contrary to the allegations of the Complaint, Defendant assumes that Plaintiff's overtime claim is based on off-the-clock work.

First, Defendant provides no evidence or legal authority to support its proposition that every single employee employed during the class period is a member of the off-the-clock class, or that two hours of unpaid off-the-clock work is an "extremely conservative approach." Not. ¶ 29 (ECF 1). Instead, the Complaint only alleges that certain employees (the members of the off the clock class) were required to "spend time under Defendants' control for work-related tasks without compensation, including but not limited to requiring employees to wait in a long line before clocking in[.]" Complt. ¶ 40.b. (ECF 1-1). Plaintiff's situation is illustrative. Approximately three times per week, Plaintiff Ahmad spent

approximately five minutes waiting in line to clock in. Ahmad Dec. ¶ 7. Accordingly, Plaintiff suffered approximately 15 minutes of unpaid wages per week (or .25 of an hour).

    Second, Defendant improperly includes one hour of unpaid overtime for each class member; however, Plaintiff's overtime claim theory of liability is not based on off-the-clock work. Instead, Plaintiff's overtime claim is based on underpayment of the overtime rate because of a failure to properly calculate the overtime pay rate. Complt. ¶ 54.d. (ECF 1-1). For example, on Plaintiff Ahmad's 2/16/24 paycheck, he was paid straight time at two different hourly rates, $29.95 and $30.45 per hour. Ahmad Dec. ¶ ; Ex. 1. He also worked 11.88 hours of overtime. *Id.*

    However, Defendant paid Plaintiff an overtime rate that was 1.5 times the lower straight time rate, instead of combining the rates as required by California law. *Alvarado v. Dart Container Corp. of California*, 4 Cal.5th 542, 554 (2018) ("Regular rate of pay, which can change from pay period to pay period, includes adjustments to the straight time rate, reflecting, among other things, shift differentials and the per-hour value of any non-hourly compensation the employee has earned."). Defendant's failure to include the higher straight time rate resulted in undercompensation of $1.48.[2]

    As such, even assuming all off-the-clock work was at an overtime rate, using Defendant's assumed base rate of $13 per hour and Plaintiff's evidence in support of 16,000 workweeks, the total unpaid wages for the First Cause of Action are $78,000.[3] Adding liquidated damages for the minimum wage portion of $52,000, the total amount in controversy for the off-the-clock claim is $130,000.

---

[2] Straight time pay: $718.80 + $138.55 = $857.35; divided by straight time hours: $857.35 ÷ 28.55 = 30.03; multiplied by 1.5: $30.03 x 1.5 = $45.05; total OT pay should have been $45.05 x 11.88 = $535.19 instead of $533.71.
[3] OT rate of $19.50 x .25 hours per workweek x 16,000 workweeks = $78,000.

As to the overtime claim, even assuming every class member suffered an incorrect regular rate of pay every workweek of the class period, based on Plaintiff's example of an underpayment of $1.48, this results in a total amount in controversy for this claim of $23,680.[4]

**Accordingly, Plaintiff's revised estimated damages for the First and Second Causes of Action is $153,680.**[5]

### 2. Plaintiff's Third and Fourth Causes of Action for Failure to Provide Meal and Rest Periods place $416,000 in controversy.

Defendant assumed that all class members missed one meal period per week and one rest break per week, i.e., a 20% violation rate for each claim. Defendant alleges that Plaintiff's meal and rest period claims are valued at $2,236,000. As addressed above, Defendant's application of a 20% violation rate to every single class member for the entire class period is not reasonable. Further, Defendant assumes that every class member worked full-time, five days a week and over five hours per day. To the contrary, Plaintiff Ahmad worked with dozens of employees who worked only part-time, and, as such, would not have suffered meal and rest violations at the same 20% per workweek rate. Ahmad Dec. ¶ 7.

In *Blevins v. Republic Refrigeration, Inc.*, No. CV 15-04019 MMM (MRWx), 2015 WL12516693, at *10 (C.D. Cal., Sept. 25, 2015), the defendant assumed a 20% violation rate for missed meal and rest periods, respectively. While the court did not challenge the defendant's assumed frequency of violations, it concluded that the defendant's other assumptions were unfounded. Specifically, the defendant failed to account for the fact that some employees worked for less than the entire class period and failed to proffer any evidence that all class members worked full-time rather than part-time.

---

[4] $1.48 x 16,000 workweeks = $23,680.
[5] $78,000 + $23,680 = $153,680.

- 6 -

**Plaintiff's Brief Regarding Subject Matter Jurisdiction**

Likewise, here, Defendant's assumptions that all class members worked full time the entire class period without interruption are directly contrary to both Defendant's own assertions and Plaintiff's evidence.

Even using Defendant's assumed 20% violation rate and Plaintiff's evidence-based assumption of 16,000 workweeks, **the amount in controversy for the Third and Fourth Causes of Action is $416,000.**[6]

### 3. Plaintiff's Fifth/Sixth Causes of Action for Failure to Provide Accurate Itemized Statements place $400,000 in controversy.

Defendant assumed the maximum statutory penalty ($4,000 per class member) for each class member and multiplied it by the total number of class members that Defendant alleges were employed during the class period, for a total of $1,600,000.

There is a major flaw in Defendant's calculations. The statutory period for Labor Code section 226(e) penalties is one year. Cal. Code Civ. Proc. § 340; see *Elliot v. Spherion Pacific Work, LLC,* 368 Fed.Appx. 761, 764 (9th Cir. 2010). Defendant's own contentions establish that all 400 class members were not employed for the past year. Not. ¶ 43 (ECF 1) (alleging that "approximately 175" class members separated from employment in the last three years). Thus, Defendant's calculation assuming that all 400 employees were still employed during the last year of the class period is contradicted by its own evidence.

Further, Plaintiff's evidence establishes that not all 400 class members worked during the one-year statutory period. Plaintiff Ahmad witnessed employee turnover during his employment with Defendant. Ahmad Dec. ¶¶ 4-6.

As such, a more reasonable assumption of the quantity of class members who suffered wage statement violations during the statutory period is 100, or one-fourth of the 400 total class members. **As such, the amount in controversy for**

---

[6] 16,000 workweeks x $13.00 x 2 hours/violations per week = $416,000

- 7 -

**Plaintiff's Brief Regarding Subject Matter Jurisdiction**

**the Fifth and Sixth Causes of Action is $400,000.**[7]

        *4. Plaintiff's Seventh Cause of Action for Failure to Pay Wages Upon Termination places $341,250 in controversy.*

California Labor Code § 203(a) states in relevant part: "If an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

Here, Defendant alleges that there are 175 class members who separated employment during the statutory period. However, this contradicts Defendant's evidence that all 400 class members worked the entire class period. Not. 1 ¶¶ 11, 25 (ECF 1). Defendant calculates $546,000 in waiting time penalties by assuming that all 175 separated employees who separated within the last three years worked eight hours per day. However, the Complaint does not allege that all employees were full-time. Accordingly, it is not reasonable to assume all the members of the waiting time penalties class worked eight-hour shifts.

In the absence of evidence regarding the applicable shift length, Plaintiff proposes using a shift length of five hours per day. **As a result, Plaintiff's revised estimated damages for the Seventh Cause of Action: $341,250**.[8]

        *5. Plaintiff's Request for Attorneys' Fees places $327,732.50 in controversy.*

Finally, Defendant contends that future attorney's fees should be included in the amount in controversy calculation. Not. ¶ 44 (ECF 1). Defendant makes no attempt to independently calculate Plaintiff's actual, and likely recoverable, future attorneys' fees. "[D]efendant must prove the amount of attorneys' fees at stake by

---

[7] 100 non-exempt employees x $4,000 = $400,000
[8] 175 separated employees x 30 days x 5 hours x $13.00 per hour

- 8 -
**Plaintiff's Brief Regarding Subject Matter Jurisdiction**

a preponderance of the evidence; we may not relieve the defendant of its evidentiary burden by adopting a per se rule for one element of the amount at stake in the underlying litigation." *Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 796 (9th Cir. 2018). A removing defendant must "prove that the amount in controversy (including attorneys' fees) exceeds the jurisdictional threshold by a preponderance of the evidence," and to "make this showing with summary-judgment-type evidence." *Id.* at 795. "A district court may reject the defendant's attempts to include future attorneys' fees in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id.*; see, e.g., *Brown v. BQ Operations Holding, LLC*, No. CV 21-2293-DMG (JCX), 2021 WL 1922929, at *2 (C.D. Cal. May 13, 2021) ("a 25% fee calculation of the maximum possible recovery, as opposed to likely recovery or lodestar amount, is not a reasonable figure with which to calculate the amount in controversy").

Here, Defendant provides no evidence of the amount of attorneys' fees. Defendant simply tacks 25% on to its speculative damage calculation. Thus, Defendant has not shown by a preponderance of the evidence that the inclusion of attorneys' fees in the instant case would cause the amount in controversy to exceed the $5 million threshold.

In any event, assuming Defendant could provide evidence that 25% of the amount in controversy should be included as attorneys' fees, **this amount of the revised total is $327,732.50.**

## III.
## CONCLUSION

Using Plaintiff's more reasonable assumptions and calculations supported by evidence, the total amount in controversy is $1,638,662.50:

///

///

///

- 9 -

**Plaintiff's Brief Regarding Subject Matter Jurisdiction**

| Claim | Defendant's Alleged Amount in Controversy | Plaintiff's Revised Calculations |
|---|---|---|
| Unpaid Overtime and Minimum Wages | $3,913,000 | $153,680 |
| Failure to Provide Meal & Rest Periods | $2,236,000 | $416,000 |
| Failure to Provide Accurate Itemized Statements | $1,600,000 | $400,000 |
| Failure to Timely Pay Wages on Termination | $546,000 | $341,250 |
| Attorneys' Fees | $2,073,750 | $327,732.50 |
| **TOTAL** | **$10,368,750** | **$1,638,662.50** |

For the foregoing reasons, Plaintiff herein respectfully requests that this Court issue an Order remanding this action to the Superior Court of the State of California for the County of Los Angeles.

Dated: February 7, 2025            D.LAW, INC.

By: _/s/ Gregg Lander_
Emil Davtyan, Esq.
Gregg Lander, Esq.
Vanessa M. Ruggles, Esq.
Taylor B. Keaster, Esq.
Attorneys for Plaintiffs